**H. K. BEALIEU, d/b/a Bealieu Insurance Agency, Appellant,**

v.

**Byron KUTH, Appellee.**

**Byron D. KUTH, Appellant,**

v.

**HARTFORD LIVESTOCK INSURANCE COMPANY, Inc., Appellee.**

Court of Appeals of Kentucky.

March 31, 1967.

C. W. Swinford, Stoll, Keenon & Park, Lexington, for H. K. Bealieu and Hartford Livestock Ins. Co.

Alvin B. Trigg, Joe C. Savage, Wallace, Turner & Trigg, Lexington, for Byron Kuth.

PALMORE, Judge.

These consolidated appeals arise out of a complaint by Byron D. Kuth against Hartford Livestock Insurance Company and H. K. Bealieu, an insurance agent, seeking recovery of $10,000 from one or both defendants in connection with an insurance transaction.

After hearing the evidence without a jury the trial court dismissed Hartford and entered judgment against Bealieu in the amount sought. Bealieu appeals from the judgment against him, and Kuth appeals from the judgment insofar as it absolves Hartford.

Bealieu was an agent for Hartford and was in the business of insuring horses. He had authority to bind Hartford up to $50,000 on one animal, and could do so by oral contract pending issuance of a binder. Kuth had a fine standardbred 2-year-old mare named Merrie Annabelle. On or about September 29, 1958, during the evening hours after closing time of the telegraph office Bealieu agreed to and did insure Merrie Annabelle for $40,000, and on the next morning he telegraphed the information to Hartford. A day or so later Merrie Annabelle won another race in record time, which increased her value, and on October 1 Kuth and Bealieu had a conversation in which Kuth indicated that he thought the mare was worth $150,000 and wanted her insured for $75,000. Bealieu advised Kuth that Hartford's limit was $50,000 and that he would have to go to Lloyds of London in order to get $75,000 coverage.

At this point there is a conflict in the evidence. Bealieu says the understanding was that he would endeavor to procure $75,000 coverage from Lloyds. Since it is not possible under the customary terms of this kind of insurance to have contracts with two different companies on the same animal without special permission, Bealieu's intention was to cancel the $40,000 if and when he got the $75,000 coverage from Lloyds. Kuth, on the other hand, testified that when he learned Hartford's limit was $50,000 he told Bealieu to cover him for that and try to get an additional $25,000, to which Bealieu agreed.

Bealieu did not represent Lloyds, so he contacted Klair and Scott, an agency that did, and on October 2 an application for $75,000 coverage was cabled to London, England. Tentative approval was received from London on October 3, but on that morning Merrie Annabelle sustained an injury that rendered her uninsurable and resulted in her eventual destruction.

Hartford paid Kuth $40,000 but denied any additional coverage. Kuth sued both Hartford and Bealieu, claiming against Hartford that Bealieu had bound the company by oral contract for the additional $10,000 and claiming against Bealieu that he had agreed to procure an additional $10,000 coverage and negligently failed to do so.

The "Findings of Fact" entered by the trial court are a combination of both factual and legal determinations. They recite in substance that in undertaking to procure insurance additional to the initial $40,000 covered by Hartford, Bealieu became a broker, and in that capacity failed to exercise ordinary diligence because, among

other things, he did not attempt to obtain $10,000 more coverage from Hartford.

According to the findings, Bealieu "represented that * * * Hartford * * * would not write the additional insurance, but in fact the proof showed *that special permission from Hartford was required* and the defendant, Bealieu, failed to use ordinary care, skill and judgment in attempting to secure the additional insurance from * * * Hartford," etc. (Emphasis ours.)

The evidence on which it was found that special permission would have been necessary to obtain $10,000 additional coverage from Hartford is contained in the following passage from Bealieu's testimony:

Q. "At any time had you told Mr. Kuth that he was insured for an additional $10,000 on Mary [sic] Annabelle?"

A. "No, I had not."

Q. "At any time did you tell Mr. Kuth that he would get the additional $25,000 policy at Lloyds on Mary [sic] Annabelle?"

A. "No, I did not."

Q. "Could you have written through Clarence Scott [the Lloyds agent] or anybody else an additional $25,000 policy *on top of the policy with Hartford?*" [Emphasis ours.]

A. "Not without getting special permission."

Q. "Did you attempt to get any sort of special permission?"

A. "I did not."

Q. "If you had gotten the $75,000 policy would you have had to cancel the $40,000 existing policy?"

A. "I would have had to cancel the binder."

Q. "Hartford then won't let successive policies be written on the same animal?"

A. "That is correct."

Q. "Then * * *

MR. TRIGG: "I object, that's not what he said."

THE COURT: "I think that is rather leading. I believe his testimony was that they wouldn't let him take additional coverage without special permission."

If it were true that Bealieu could not have committed Hartford for a $10,000 increase under the existing contract without special permission, and that he did not have ostensible authority to do so, then Hartford is not liable. Although the findings do not so specify, obviously that is the basis on which Hartford was found not liable. It seems to us, however, that the finding of a necessity for special permission is clearly erroneous. As we understand the evidence, special permission would have been necessary in order to have additional insurance with *another company*, but not to increase the amount of coverage within the agent's limit with the same company.

Our view of the case is that one of three things happened: (1) Bealieu covered Merrie Annabelle for $50,000 with Hartford or knowingly led Kuth to think so; (2) Bealieu did not purport to increase the coverage with Hartford, but undertook to procure, if possible, the desired amount of coverage elsewhere; or (3) there was a genuine misunderstanding. If (1) is true, Hartford is liable and Bealieu is not liable, since Kuth got what he says he thought he was getting. If (2) is true, neither Hartford nor Bealieu is liable. Bealieu certainly acted with reasonable dispatch in attempting to insure with Lloyds. And if (3) is true, of course neither Hartford nor Bealieu is liable.

There is no room in this case for finding Bealieu personally liable to Kuth. He had the authority from Hartford to do what Kuth said he did. So if Kuth's word is taken, Hartford and Hartford only is

bound. There was no reason for any undertaking on the part of Bealieu which would embrace his applying for a $10,000 increase with Hartford, because he could have effected the increase on the spot. In this respect it is significant, we think, that neither Kuth nor Bealieu contended that Bealieu agreed to find $35,000 more coverage. Kuth said he agreed to find $25,000 more; Bealieu insisted he was to look for $75,000 from one company.

The findings of fact are insufficient in that they do not determine whether Bealieu did or did not purport to cover the mare for $50,000 with Hartford. That is necessary, and all that is necessary, to a disposition of the case.

The judgment is reversed and the cause remanded with directions that the action be dismissed as to Bealieu, the findings of fact and conclusions of law revised, and a new judgment entered with respect to Hartford on the basis of the revised findings and conclusions.

All concur except:

MONTGOMERY, J., not sitting.